UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ASHLYNN TYLER,

        Plaintiff,

v.                                         Case No. 8:21-cv-2992-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, child disability insurance benefits ("CDIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, CDIB, and SSI (Tr. 212-222). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 86-131). Plaintiff then requested an administrative hearing (Tr. 182-83). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 28-56). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied

Plaintiff's claims for benefits (Tr. 7-27). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 2000, claimed disability beginning on November 30, 2018 (Tr. 212). Plaintiff obtained a high school education (Tr. 34). Plaintiff does not have past relevant work experience (Tr. 117). Plaintiff alleged disability due to Turner Syndrome, attention deficit hyperactivity disorder ("ADHD"), and reactive attachment disorder ("RAD") (Tr. 242).

In rendering the administrative decision, the ALJ indicated that Plaintiff had not attained the age of 22 as of November 30, 2018, the alleged onset date (Tr. 13). The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 30, 2018, the alleged onset date (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: personality disorder, depression, bipolar disorder, and ADHD (Tr. 13). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform all exertional levels but with the following non-exertional limitations: Plaintiff is able to understand, carry out and remember

2

simple, routine and repetitive tasks involving only simple, work-related decisions with the ability to adapt to routine work place changes; Plaintiff can tolerate frequent interaction with supervisors and coworkers but have no interaction with the general public (Tr. 14-15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

The ALJ determined that Plaintiff had no past relevant work (Tr. 20). Notwithstanding, given Plaintiff's background and RFC, the vocational expert ("VE") testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a janitor, hand packager, and kitchen helper (Tr. 21). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 22).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical,

physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect, including a provision for payment of a child's benefits on the earnings record of an insured person who is entitled to benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22. *See* 20 C.F.R. § 404.350(a)(5); *see* 42 U.S.C. § 402(d)(1). These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by failing to properly evaluate the opinion of an examining psychologist. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

Plaintiff argues that the ALJ did not make any specific findings about whether the opinion of the examining psychologist, Dr. Rogers-Wood, was persuasive or address the factors of supportability and consistency. The Commissioner responds that Dr. Rogers-Wood did not provide a medical opinion, but rather provided recommendations for accommodations that would allow Plaintiff to function best in an educational environment.

Previously, in the Eleventh Circuit, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel.*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted); *see also* 20 C.F.R. §§ 404.1527, 416.927. However, claims filed on or after March 27, 2017 are governed by a new regulation applying a modified standard to handling medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). Of note, the new regulations remove the "controlling weight" requirement when considering medical opinions and prior administrative medical findings for applications submitted on or after March 27, 2017. 20 C.F.R. § 416.920c(a); *Harner*

6

*v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 895-98 (11th Cir. 2022); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (per curiam).[1]

Indeed, the Eleventh Circuit recently concluded that because the new regulations fall within the scope of the Commissioner's authority and are not arbitrary and capricious, the new regulations abrogate the Eleventh Circuit's prior precedents applying the so-called treating-physician rule. *Harner*, 38 F.4th at 896. Accordingly, because Plaintiff submitted her application for benefits on March 11, 2020 (Tr. 212-222) the ALJ properly applied the new regulation.

Under the new regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, including from a claimant's medical source. 20 C.F.R. §§ 404.1520c, 416.920c(a); *see Tucker v. Saul*, Case No. 4:19-CV-00759-RDP, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). Rather, in assessing a medical opinion and prior administrative medical finding, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, the area of the medical source's specialization, and other relevant factors. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)-(5). The primary factors an ALJ will consider when evaluating the persuasiveness of a

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

medical opinion or prior administrative medical finding are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

As previously stated, beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), (4), & (5), 416.920c(c)(3)(i)-(v), (4), & (5). While the ALJ must explain how he or she considered the supportability and consistency factors,

the ALJ need not explain how he or she considered the other factors.[2] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Medical evidence that does not rise to an opinion under the regulations is treated differently. This category of evidence includes "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3). The ALJ must consider other medical evidence but need not articulate his findings regarding its persuasiveness. *Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022).

The new SSA regulations also altered the parameters of what qualifies as a medical opinion. The new SSA regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence,

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

9

>or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
>(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
>(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2); *see also* 20 C.F.R. § 416.913(a)(2)(i). The previous definition of medical opinion was broader. The prior regulations provided that medical opinions were statements from acceptable medical sources that reflect judgments not only about what the claimant can still do despite their impairment and the claimant's physical or mental restrictions, but also the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis. 20 C.F.R. §§ 404.1527(a), 416.927(a).

The Eleventh Circuit has yet to provide guidance on what qualifies as a medical opinion under the new regulations, but as one district court decision explained, examples of medical opinions include "statements from a physician that a claimant can never lift more than twenty pounds, cannot understand and follow complex instructions, cannot tolerate anything more than occasional interaction with the public, or any other comments about the extent to which a claimant can or cannot perform a work-related function." *Dye*, 2022 WL 970186, at *4. Decisions from district courts within the Eleventh Circuit have generally held that medical findings or treatments, such as test results, prescriptions, or surgery recommendations, are not medical opinions. *See Maguire v. Saul*, No. 8:20-cv-710-T-TGW, 2021 WL 2284463, at *4 (M.D. Fla. June 4, 2021) (reasoning that medical

10

findings are not medical opinions because they do not necessarily provide perspectives about claimant's functional abilities and limitations); *Wood v. Comm'r of Soc. Sec.*, No. 6:20-cv-963-LRH, 2021 WL 2634325, at *5 (M.D. Fla. June 25, 2021) (holding the ALJ did not err by failing to weigh opinions where a claimant pointed to nothing in the medical evidence besides medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis, "none of which constitute 'medical opinions'"); *Lucas v. Comm'r of Soc. Sec.*, No. 6:21-CV-1836 DAB, 2022 WL 2901219, at *4 (M.D. Fla. July 22, 2022) (reasoning that the ALJ was not required to evaluate an ARNP's description of claimant's level of pain as "10/10" because it was not a medical opinion); *Alisa M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-559-CCB, 2022 WL 16752091, at *9 (N.D. Ga. Sept. 30, 2022) (holding doctors' recommendation that claimant have surgery was not a medical opinion). Decisions from this district have also held that general statements assessing that a claimant cannot work do not qualify as medical opinions. *See Matthews v. Comm'r of Soc. Sec.*, No. 8:22-CV-679-JSS, 2022 WL 17844054, at *10 (M.D. Fla. Dec. 22, 2022) (reasoning that because doctors' statements that claimant's depression and anxiety impacted her ability to work did not "specifically explain how Plaintiff's depression and anxiety impacted her ability to work and what Plaintiff could still do despite these impairments," the statements were not medical opinions); *Smith v. Comm'r of Soc. Sec.*, No. 5:21-CV-551-PRL, 2022 WL 17076709, at *4 (M.D. Fla. Nov. 18, 2022) (holding statements were not medical opinions where doctors "checked the box indicating that Plaintiff's narcolepsy impacted his ability to work"

because the statements did not "specifically explain how narcolepsy impacted Plaintiff's ability to work and what Plaintiff could still do despite his narcolepsy").

In the instant case, Dr. Rogers-Wood evaluated Plaintiff as part of a vocational rehabilitation program (Tr. 587-610). Dr. Rogers-Wood noted that Plaintiff had been referred to her as a result of Plaintiff's longstanding history of educational and mental health difficulties, which her grandparents, who were also her guardians, had sought treatment for since she was a young child (Tr. 587). Dr. Rogers-Wood conducted a clinical interview and administered multiple diagnostic tests (Tr. 589-97). Dr. Rogers-Wood diagnosed Plaintiff with Turner Syndrome, RAD, ADHD, and a specific learning disorder with impairment in mathematics (Tr. 600). Dr. Rogers-Wood described that the purpose of her evaluation was to provide information regarding Plaintiff's current cognitive, executive, and emotional functioning to inform vocational rehabilitation decisions regarding Plaintiff's ability to function in vocational training program and chosen work environment (Tr. 597).

Dr. Rogers-Wood found that in the academy setting, Plaintiff still struggled with getting herself started without redirection and remembering to turn work in (Tr. 598). Dr. Rogers-Wood also found that Plaintiff's ability to read words quickly without having to devote substantial mental efforts to decoding them was in the very low/normative weakness range, thus tasks requiring her to work quickly are a challenge for her (Tr. 598-99). Moreover, Plaintiff's perceptual reasoning index scores were in the low average/normative weakness range (Tr. 591) and her

12

information processing speed scores were in the extremely low/normative weakness range (Tr. 592). Dr. Rogers-Wood described that processing speed refers to the rate at which the brain can process familiar information during very easy tasks that almost everyone can do (Tr. 592). Plaintiff also scored in the very low/normative weakness range in her ability to use working memory (Tr. 591). Dr. Rogers-Wood also noted that Plaintiff's executive functioning and daily behavior patterns were consistent with her diagnosis of Turner Syndrome and RAD in that Plaintiff exhibited symptoms of upsetting thoughts, separation fears, social anxiety, defiant/aggressive behaviors, academic difficulty, hyperactivity, perfectionistic/compulsive behaviors, and social problems (Tr. 599). Dr. Rogers-Wood noted that "[a]lthough [Plaintiff] continues to struggle with social skills, maintaining focus and attention, and mood regulation, these difficulties are consistent with Turner Syndrome and RAD and she has made significant improvement over time and *with the proper level of support*" (Tr. 599) (emphasis added). Dr. Rogers-Wood concluded that Plaintiff would need "accommodations in educational, testing, and work situations under the Americans with Disabilities Act, Section 504" (Tr. 600). Further, she concluded that Plaintiff had the ability to function in a post-secondary vocational/trade school and in a work environment *with the appropriate accommodations and interventions* (Tr. 599).

In detailing what accommodations Plaintiff needed to function, Dr. Rogers-Wood noted that Plaintiff be permitted to use technology aids, including a computer or other similar device for notetaking to assist with her attention, working memory,

and auditory processing speed deficits (Tr. 601). Additionally, Dr. Rogers-Wood noted that Plaintiff was likely to experience difficulty with both work production and quality if she was placed under time pressure, thus she could perform tasks when she was given ample time for completion (Tr. 602) Due to Plaintiff's deficiencies in working memory, Dr. Rogers-Wood noted that oral directions would need to be short and simple, and Plaintiff would need to be given the opportunity to repeat the directions to ensure that she has correctly understood them. (Tr. 603).

The ALJ provided a detailed summary of the tests conducted by Dr. Rogers-Wood, noting that Dr. Rogers-Wood had conducted an extensive vocational rehabilitation assessment (Tr. 16-18). The ALJ even found that the assessments of the state agency mental consultants were unpersuasive because although they both reviewed the report and testing performed by Dr. Rogers-Wood, her report was consistent with moderate limitations in all areas not just some (Tr. 20). Notwithstanding, the ALJ did not make any specific findings as to whether Dr. Rogers-Wood's opinion was persuasive or specifically address Dr. Rogers-Wood's assessment of Plaintiff's functional abilities and restrictions. The Commissioner argues that the ALJ was not obligated to specifically address the persuasiveness of Dr. Rogers-Wood's opinion because she provided recommendations for Plaintiff to "thrive" in work environments and not medical opinions.

In her report, Dr. Rogers-Wood mentions the word "thrive" once. In her last numbered statement under "Resources for Guardians, Educators, & Employers," Dr. Rogers-Wood stated that "[b]ased on the results of this assessment, [Plaintiff]

14

seems likely to thrive in work environments in which there is structure, environmental distractions are minimal, and directions and expectations for work are clearly communicated and outlined" (Tr. 606). However, at no point does Dr. Rogers-Wood opine that the entirety of her assessment relates to the optimal environment for Plaintiff to function in. The Commissioner also emphasizes the fact that the relevant part of Dr. Rogers-Wood's report that discusses these accommodations is titled "Recommendations" (*see* Tr. 600). However, the Court does not read this entire section as outside the purview of a medical opinion.

There are sections within the "Recommendations" that describe certain suggestions which do not necessarily provide perspective of Plaintiff's functional abilities and limitations, such as stating that Plaintiff may benefit from Dialectical Behavior Therapy (Tr. 605) or may find it helpful to read a book regarding ADHD (Tr. 602). However, some of the other points go directly to Plaintiff's ability to perform work activities such as understanding, remembering, maintaining concentration, persistence, or pace, carrying out work instructions, etc. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)(i). For instance, Dr. Rogers-Wood found that Plaintiff needed technology aids to assist with her attention, working memory, and auditory processing speed deficits, which Dr. Rogers-Wood identified Plaintiff's performance falling in the extremely low/normative weakness range (*see* Tr. 592, 601). These statements are not regarding Plaintiff's diagnostic tests, diagnosis, or treatment, but rather her ability to perform tasks with the proper assistance.

15

Although the ALJ evaluated Dr. Rogers-Wood's report, the ALJ failed to address the medical opinion's persuasiveness or any of the functional limitations outlined as a medical opinion therein. The ALJ may have considered and rightfully rejected Dr. Rogers-Wood's limitations, and the ALJ's consideration of the RFC may not have changed the ultimate decision on Plaintiff's application. However, that conclusion would require this Court to speculate and to reweight the evidence. Thus, for the reasons explained above, the Court finds that the decision of the ALJ is due to be reversed.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 20th day of March, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record